IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JARED L.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case #4:21-cv-00040-PK<br><br>Magistrate Judge Paul Kohler |

  This matter comes before the Court on Plaintiff Jared L.'s appeal from the decision of the Social Security Administration denying his application for disability and disability insurance benefits. The Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

  This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether their findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although they are not required to discuss all of the evidence.[4] If

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

In August 2018, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on June 2, 2015.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on May 8, 2020.[10] The ALJ issued a decision on June 17, 2020, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on February 10, 2021,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

On April 15, 2021, Plaintiff filed his complaint in this case.[14] On August 4, 2021, both parties consented to a United States Magistrate Judge conducting all proceedings in the case,

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 208–09.

[9] *Id.* at 105, 106.

[10] *Id.* at 39–70.

[11] *Id.* at 7–28.

[12] *Id.* at 1–6.

[13] 20 C.F.R. § 422.210(a).

[14] Docket No. 2.

including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on September 16, 2021.[16]

Plaintiff filed his Opening Brief on December 3, 2021.[17] The Commissioner's Answer Brief was filed on February 3, 2022.[18] Plaintiff filed his Reply Brief on February 14, 2022.[19]

B.  MEDICAL HISTORY

Plaintiff alleged disability because of knee problems, anxiety, depression, irritable bowel syndrome, high cholesterol, high blood pressure, and vision problems.[20] Relevant here, Plaintiff has a long history of knee pain for which he sought and received treatment from Scott Justesen, M.D., and Gabriel Sermon, PA-C. Both Dr. Justesen and PA-C Sermon completed Residual Functional Capacity Questionnaires for Plaintiff.[21] Both providers opined that Plaintiff's symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks. They also stated that Plaintiff could walk one block without rest or severe pain, he could sit and stand for more than two hours at a time, but he could only sit, stand, and walk for about two hours in a workday. Plaintiff's providers further stated that Plaintiff would need a job that permits shifting positions at-will, and also allows him to take unscheduled breaks

---

[15] Docket No. 10.
[16] Docket Nos. 12, 13.
[17] Docket No. 16.
[18] Docket No. 20.
[19] Docket No. 21.
[20] R. at 247.
[21] *Id.* at 419–24, 378–83.

during the workday. They further stated that Plaintiff would need to elevate his legs and would require the use of a knee brace. Additionally, they stated that Plaintiff could rarely crouch/squat, climb ladders, or climb stairs. Finally, they opined that plaintiff would be absent from work more than four days per month.

C.     HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that the pain in his right knee prevented him from working full-time.[22] Plaintiff stated that he treated his pain with topical and oral medication and by wearing a brace.[23] Plaintiff further testified that his knee issues made it difficult to climb stairs and to crouch.[24] He also stated that he could drive for about 30 to 40 minutes and when he goes grocery shopping he uses the cart as a walker.[25]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 2, 2015.[26] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease of the right knee, depressive disorder, anxiety disorder, and avoidant personality disorder.[27] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

---

[22] *Id.* at 49.
[23] *Id.* at 50.
[24] *Id.* at 52, 61.
[25] *Id.* at 53–54.
[26] *Id.* at 12–13.
[27] *Id.* at 13.

equaled a listed impairment.[28] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work but he was limited: to two to three hours standing and walking combined per eight-hour shift; he could occasionally climb ramps and stairs, balance, stoop, crouch, and kneel; could never climb ladders, ropes, or scaffolds; and he could never crawl.[29] At step four, the ALJ determined that Plaintiff could no perform any past relevant work.[30] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[31]

### III. DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence. For applications filed on or after March 27, 2017, an ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[32] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are the supportability and consistency.[33] "For supportability, the strength of a medical opinion increases as the relevance of the objective

---

[28] *Id.* at 13–15.
[29] *Id.* at 15–21.
[30] *Id.* at 21.
[31] *Id.* at 21–23.
[32] 20 C.F.R. § 404.1520c(a).
[33] *Id.* § 404.1520c(a), (b)(2).

5

medical evidence and explanations presented by the medical source increase."[34] "Consistency, on the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."[35]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[36] The ALJ must explain how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings but is generally not required to explain how he or she considered other factors.[37] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[38] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[39]

The ALJ found that the opinions of Dr. Justesen and PA-C Sermon were unpersuasive. The ALJ concluded that these opinions were inconsistent with the record as a whole, including examination findings, the opinions of the state agency medical consultants, and Plaintiff's treatment history. The ALJ noted that physical examinations of Plaintiff have generally been

---

[34] *John H. v. Saul*, No. 2:20-CV-00255-JCB, 2021 WL 872320, at *4 (D. Utah Mar. 8, 2021) (internal quotation marks and citation omitted).

[35] *Id.*

[36] 20 C.F.R. § 404.1520c(b).

[37] *Id.* § 404.1520c(b)(2).

[38] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[39] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

unremarkable, with Plaintiff admitting on multiple occasions that his knee was feeling well.[40] The ALJ found the opinions of the state agency medical consultants to be persuasive because they were generally consistent with the record as a whole. However, the ALJ provided a more limited RFC than was opined by the consultants. As to his treatment history, the ALJ noted that Plaintiff had a history of conservative treatment and engaged in a wide range of daily activities.

Plaintiff challenges the ALJ's assessment of the opinions of Dr. Justesen and PA-C Sermon. Plaintiff first argues that the ALJ's analysis lacks a meaningful discussion of the examination findings relied upon by the ALJ to discount these opinions. While admittedly, the ALJ could have done more to explain why these examination findings rendered the medical opinion evidence unpersuasive, the explanation seems evident. Dr. Justesen and PA-C Sermon opine that Plaintiff would have fairly extreme limitations on his ability to perform work functions. However, the objective medical evidence revealed generally normal examination findings. Such findings are inconsistent with the limitations suggested by Dr. Justesen and PA-C Sermon, rendering them unpersuasive.

Plaintiff also suggests that the ALJ found that Dr. Justesen and PA-C Sermon's examination findings supported their limitations opinions but then proceeded to conclude that they did not. This is a misreading of the ALJ's decision. The ALJ did not find that their examination findings supported these opinions. Instead, he noted that Dr. Justesen and PA-C Sermon cited examination findings of tenderness and swelling in an effort to support their

---

[40] R. at 351, 353, 434, 435, 516, 517, 519.

opinions. Despite these examination findings, the ALJ ultimately and correctly noted that they were generally otherwise unremarkable.

Plaintiff further argues that the ALJ ignored the effects of his knee pain on his functioning capacity. This is not the case. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[41] Moreover, the ALJ explicitly stated that Plaintiff's complaints of pain were part of the reason for limiting him to light work with only two to three hours of walking and standing combined in a shift.[42]

Plaintiff further complains that the ALJ erred in relying on his treatment history "by failing to identify any such aspects of that treating history, or discuss how those aspects detracted from the limitations opined by Dr. Justesen and PA-C Sermon."[43] This is incorrect. The ALJ discussed Plaintiff's treatment history at length, including his treatment for knee pain and his activities of daily living.[44] There was no need for the ALJ to restate this evidence in discussing his consideration of the medical opinion evidence.[45]

---

[41] *Id.* at 18.

[42] *Id.* at 20.

[43] Docket No. 16, at 18.

[44] R. at 17–20.

[45] *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.")

Plaintiff next argues that his treatment history does support Dr. Justesen and PA-C Sermon's limitations. But just because Plaintiff's treatment history could support more than one conclusion does not mean that the ALJ's decision is not supported by substantial evidence.[46] Plaintiff essentially asks the Court to reweigh the evidence and substitute its judgment for that of the ALJ, which it cannot do.[47]

Plaintiff's final argument is that the ALJ's treatment of the state agency medical consultants was inconsistent. While the ALJ found their opinions persuasive, he limited Plaintiff's RFC beyond what the consultants found. However, the Tenth Circuit has held that "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."[48] Thus, the ALJ did not commit reversible error when he provided for a narrower RFC.

---

[46] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

[47] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

[48] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision of the Commissioner.

DATED this 17th day of May, 2022.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge